UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERONICA EXLEY *et al.*,<br>         Plaintiffs,<br><br>      v.<br><br>SYLVIA MATHEWS BURWELL, *Secretary of Health and Human Services*,<br>         Defendant. | No. 3:14-cv-1230 (JAM) |

ORDER ON PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL

This is a case brought by a group of Medicare beneficiaries seeking to represent a class of similar individuals against the Secretary for Health and Human Services for imposing unlawful delays in the administrative appeals process for Medicare claims.[1] Each plaintiff requested a hearing before an Administrative Law Judge (ALJ). The Medicare Statute and its governing regulations provide a 90-day deadline by which certain beneficiaries will receive decisions on their claims from an ALJ. But all plaintiffs waited beyond that 90-day period before receiving a decision. Plaintiffs now seek class-wide relief in the form of an injunction requiring the agency to comply with the 90-day time limit for an ALJ decision.

BACKGROUND

Plaintiffs are six Medicare beneficiaries, four of whom reside in Connecticut. Each plaintiff sought Medicare coverage for acute care, including ambulance rides to and from the hospital, occupational therapy following surgery, cancer treatment, and a stay in a hospital intensive care unit. Each plaintiff filed a claim for Medicare coverage, and the U.S. Department

---

[1] As the first original named plaintiff is now deceased, the Clerk is respectfully asked to amend the case caption to reflect this change. Five of the six current plaintiffs are individual beneficiaries and the sixth is the estate representative for the deceased beneficiary. For the sake of simplicity, I refer to all plaintiffs as beneficiaries in this ruling.

of Health and Human Services (HHS) denied each claim at the first levels of administrative review. Plaintiffs then each filed a request for a hearing before an ALJ, and they waited for periods ranging from 194 days to 626 days after mailing their request before receiving a decision from the ALJ.

Plaintiffs do not quarrel with the merits of the denials of their claims at the early levels of review or with the outcome of the ALJ decisions. Instead, they challenge the agency's failure to comply with what plaintiffs believe is the agency's legal obligation to issue a timely decision by an ALJ. More precisely, plaintiffs believe that they are entitled by regulation to such a decision within 90 days of requesting one.

The Medicare Statute and its governing regulations provide four categories of benefits: Medicare Parts A and B, often referred to as "traditional" Medicare, provides general healthcare and hospitalization benefits; Medicare Part C, or "Medicare Advantage," allows private health insurance companies to provide Medicare benefits; and Medicare Part D provides coverage for prescription drugs. As plaintiffs describe it, after Medicare coverage is initially denied, the denial-review process may include several stages. Although the initial stages of the process differ between the Medicare categories, each category allows beneficiaries to request a hearing before an ALJ. The Medicare regulations generally entitle beneficiaries to receive decisions on their claims from an ALJ within 90 days of requesting a hearing. Plaintiffs now seek class-wide relief in the form of an injunction requiring the agency to comply with the 90-day time limit to issue an ALJ decision. Defendant, the Secretary of HHS, has challenged their motion for class certification.

# DISCUSSION

## *Mootness*

As a preliminary matter, I address defendant's claim that this case was rendered moot when all of the named plaintiffs received favorable decisions on their Medicare appeals from the ALJ. As the Second Circuit has made clear, "a class action cannot be sustained without a named plaintiff who has standing." *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011). In general, this means that a court will not certify a class "if the basis for the claim has been rectified or if the plaintiff is no longer subject to the challenged conduct," because the claim becomes moot. *Id.* at 99–100.

But "[t]he relation-back doctrine . . . has unique application in the class action context, preserving the claims of some named plaintiffs for class certification purposes that might well be moot if asserted only as individual claims." *Id.* at 100; *see also Landers v. Leavitt*, 232 F.R.D. 42, 47 (D. Conn. 2005) ("[I]n certain circumstances, to give effect to the purposes of" class actions, "it is necessary to conceive of the named plaintiff as part of an indivisible class and not merely a single adverse party even before the class certification question has been decided." (internal quotation marks and citation omitted)). For example, where the issue in the case is "inherently transitory"—that is, the court is unlikely to resolve the issue or to rule on a plaintiff's certification motion before his or her injury is resolved through other means—such cases would otherwise be "capable of repetition, yet evading review . . . . no matter who prosecute[s] them." *Amador*, 655 F.3d at 100–01 (internal quotation marks and citation omitted). Courts in this circuit have found a solution to this problem by allowing a motion for class certification "to 'relate back' to the filing of the complaint" for the purpose of establishing the named plaintiffs' standing and enabling judicial review. *Id.* at 100 (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 n.11

(1975)).

This is one of those cases. An individual Medicare beneficiary's claim against the agency for timely administrative review could become moot as soon as the agency grants an ALJ hearing, which could happen at any time and of course is within the agency's control. Therefore, it may be in the agency's strategic interest to avoid litigation by "picking off" plaintiffs and granting them a hearing. For whatever reason, each of the plaintiffs here received a hearing after the filing of the complaint, and characterizing this case as moot as a result "obviously would frustrate the objectives of class actions." *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also Mey v. Frontier Commc'ns Corp.*, 2014 WL 6977746, at *5 (D. Conn. 2014) ("If a corporate defendant was allowed to forestall a class-wide injunction that would require changes in nationwide company practices by 'picking off' a named plaintiff with an offer to cease its conduct only with respect to her, then not only the policies of Rule 23 but the policies of the underlying statutes creating the legal rights at issue . . . would go unredressed."). The present mootness of the individual claims is not dispositive here, because the alleged violations are capable of repetition yet evading review, and I will consider the claims to "relate back" to the time the complaint was filed at which time plaintiffs' claims were not moot.

### *Rule 23: Requirements for Class Certification*

Plaintiffs now seek to certify a class to litigate their claims. They ask the Court to define the class as follows:

> All Medicare beneficiaries who have pending a timely request, or will have pending a timely request, for an administrative law judge hearing, and for whom an administrative law judge has not rendered, or will not render, a decision on such hearing by the end of the 90-day period beginning on the date the request for hearing was filed.

Doc. #8 at 1.

To certify a class under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, the Court must ensure the proffered class meets certain prerequisites. Fed. R. Civ. P. 23(a), (b); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011); *Johnson v. Nextel Commc'ns*, 780 F.3d 128, 137–39 (2d Cir. 2015); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). Specifically, Rule 23(a) provides that:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, a party seeking class certification pursuant to Rule 23(b)(2) must show that the government "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* 23(b)(2). But "certification of a class for injunctive relief is only appropriate where 'a single injunction . . . would provide relief to each member of the class.'" *Sykes*, 780 F.3d at 80 (quoting *Dukes*, 131 S. Ct. at 2557).

To satisfy the first Rule 23(a) requirement of "numerosity," plaintiffs must demonstrate that the size and composition of the class is such that certifying "a class is superior to joinder" of individual plaintiffs to litigate their claims. Fed. R. Civ. P. 23(a)(1); *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)) (subsequent case history omitted). The government contends that plaintiffs do not satisfy Rule 23's "implied requirement" that class members be identifiable in order for the class to be recognized. Doc. #22 at 16. Principally, the government challenges

the fact that the proffered class includes future Medicare beneficiaries. But although some courts have recognized such a requirement, the precise composition of the class need not be established prior to class certification. *See, e.g.*, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006). Instead, at this stage, plaintiffs must only "show some evidence of or reasonably estimate the number of class members." *Robidoux*, 987 F.2d at 935 (citation omitted). They need not present "evidence of exact class size or identity of class members." *Ibid.* To that end, courts have recognized that classes may involve future class members—such inclusion does not defeat class certification. *See Amador*, 655 F.3d at 105 (remanding class certification issue where class contains future members); *Robidoux*, 987 F.2d at 936 (same).

To satisfy the second requirement of Rule 23(a), plaintiff must demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Sykes*, 780 F.3d at 80. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" through the same or similar conduct by the defendant. *Dukes*, 131 S. Ct. at 2551 (internal quotation marks omitted). Moreover, they must share a claim that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ibid.* To satisfy this requirement, it will suffice to show just "a single [common] question" among class members. *Id.* at 2556 (alteration in original) (internal quotation marks and citations omitted).

There is no debate that the proffered class members share common questions of fact—they are Medicare beneficiaries who were denied benefits and who did not receive a decision from the ALJ within 90 days of requesting one. But the government alleges that there are no questions of law common to the class. It argues that the class definition improperly includes class members who are not *entitled* to such a timely decision—namely, beneficiaries of Medicare Part

6

C and Part D. Nonetheless, for the reasons below, I conclude that plaintiffs have adequately alleged a legal injury common to all proposed class members. Beneficiaries of Medicare Part C and Part D are entitled to a hearing within 90 days, just like beneficiaries of Part A and Part B, and a deprivation of such an entitlement would create a common injury.

The Medicare Statute requires "an administrative law judge [to] conduct and conclude a hearing on a [a denial of benefits under Medicare Part A or Part B] and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed," unless the parties waive their right to such a timely decision. 42 U.S.C. § 1395ff(d)(1). The federal regulations echoing that rule appear in Part 405 of Chapter IV of Title 42 of the Code of Federal Regulations. *See* 42 C.F.R. § 405.1016(a). Likewise, the regulations governing Medicare Part D specifically include a 90-day deadline for an ALJ decision. 42 C.F.R. § 423.2016(a)(1).

Neither the Medicare Act nor its regulations contain an equivalent deadline provision that applies to Part C beneficiaries. But in the absence of an explicit regulation, I refer to a separate catch-all provision pertaining to denial-of-benefits appeals by Part C beneficiaries. It states that where no contrary provision governs, "the regulations in part 405 of this chapter"—including the 90-day deadline—"apply . . . to the extent they are appropriate." 42 C.F.R. § 422.562(d). The government has presented no reason why applying the 90-day deadline to Part C beneficiaries would not be "appropriate." Indeed, the federally administered Medicare website implies that the same type of ALJ review is available for all Medicare claims, and makes no distinction between beneficiaries of the different parts. *See* Appeals – Level 3: Hearing before an Administrative Law Judge (ALJ), Medicare.gov, *available at* http://medicare.gov/claims-and-appeals/file-an-appeal/appeals-level-3.html (accessed June 3, 2015) ("In most cases, the ALJ will send you a

written decision within 90 days of getting your request."). Accordingly, I conclude that all Medicare beneficiaries may be entitled to an ALJ hearing within 90 days, at least for the purposes of satisfying the "typicality" requirement.

Plaintiffs have adequately alleged that the government has not met an obligation it owes to all class members—to issue an ALJ decision on a Medicare benefits appeal within 90 days of a request—and that the class members have suffered a common injury as a result. Moreover, the Court's resolution of whether the government in fact owes class members such an obligation, or whether the government was entitled to exceed its 90-day regulatory deadline, "will resolve an issue that is central to the validity" of each member's claim. *Dukes*, 131 S. Ct. at 2551. The "commonality" requirement has been satisfied.

Like commonality, the typicality requirement for class certification is satisfied when the claims of the class representatives are typical of those of the class members—where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Fed. R. Civ. P. 23(a)(3); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37 (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed. 1985); 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1764, at 235–36 (1986)); *see also Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn. 2010) (same).

The government alleges that the named plaintiffs, all of whom have now received a

decision from the ALJ, are atypical among a class of individuals who have not received such a decision. But this ignores the revolving-door nature of the violation charged in this case, and since I have now resolved that I have jurisdiction and that the named plaintiffs' claims are justiciable, this argument for atypicality does not support denial of class certification. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 & n.15 (1982) (distinguishing requirements of justiciability from those of Rule 23 commonality and typicality requirements); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 & n.10 (2d Cir. 2012) (same).

Moreover, all named plaintiffs experienced the same course of events and were subject to the same allegedly unlawful conduct by the government as the class they seek to represent—all believe they were entitled to an ALJ decision on their Medicare benefits appeal within the 90-day regulatory deadline, and all were denied such a timely decision. That the named plaintiffs eventually received a decision is of no moment to the legal claim of the class; it does not change the fact that they had to wait beyond 90 days to receive one.

To the extent the government argues that the named plaintiffs are atypical of the class because the Court would be obligated to individually apply the factors test laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 74–79 (D.C. Cir. 1984) to each class member to determine whether judicial review is appropriate, I am not persuaded. *TRAC* was a decision on the merits pursuant to the court's mandamus jurisdiction. *See id.*; *see also NRDC v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *TRAC* factors favorably on the merits). This claim arises squarely under the Medicare Statute, as I determined in my prior order denying the government's motion to dismiss. Doc. #53 at 36. Although the principles that drive the application of these factors may be worth considering at a later date, the government

has pointed to no authority that would impose the *TRAC* factors in a class-certification context like this.

Finally, Rule 23(a)(4) requires that the Court determine "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35 (internal quotation marks and citation omitted). But a conflict "between named parties and the class they seek to represent" will be sufficient to defeat class certification only if the conflict is "fundamental." *Ibid.* (internal quotation marks and citations omitted).

The government does not pose a serious challenge to the adequacy of the class representatives in this case. The government argues that the named plaintiffs who have received ALJ decisions cannot adequately represent the interests of class members who have not. *See* Doc. #22 at 15–16. But although my conclusion that the named plaintiffs' claims are justiciable "'does not *automatically* establish that [they are] entitled to litigate the interests of the class [they] seek[ ] to represent,'" *Amador*, 655 F.3d at 104 (emphasis added) (quoting *Sosna*, 419 U.S. at 403), plaintiffs nonetheless may serve as class representatives if they meet the other substantive requirements of Rule 23(a)(4). *Sosna*, 419 U.S. at 403. And here, there is no indication that any named plaintiff's interests run counter to those of other class members. All seek to correct the same agency delay to which they were subject, and "the representative who defends his own interests will also be protecting the interests of the class." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483–84 (2d Cir. 1995); *see also Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 333 (D. Conn. 2001) (same), *modified on other grounds*, 434 F. Supp. 2d 107 (D. Conn. 2006). Moreover, the proposed counsel here are experienced class action litigators and very familiar with the Medicare program, and the government has not challenged their

competence to represent the proposed class. The adequacy requirement of Rule 23(a)(4) has been satisfied.

To satisfy the requirements of Rule 23(b)(2), plaintiffs must demonstrate that "a single injunction or declaratory judgment would provide relief to each member of the class." Fed. R. Civ. P. 23(b)(2); *Dukes*, 131 S. Ct. at 2557 (internal quotation marks and citation omitted). The Rule "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant" or "when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557. Rather, the conduct at issue must be able to "be enjoined or declared unlawful as to all of the class members or as to none of them." *Ibid* (internal quotation marks and citation omitted). This "does not require that the relief to each member of the class be identical, only that it be beneficial." *Sykes*, 780 F.3d at 97.

The analysis here is similar to that for the commonality prong, addressed above. Although it is possible that the proposed class definition is overbroad, and would include class members who are not entitled to an ALJ hearing within 90 days, this is resolved by limiting the definition to include only those individuals who are entitled to such a timely decision by federal statute or regulation.[2] As such, a single remedy—an order enjoining the ALJs within HHS to issue decisions within 90 days of a hearing request, or at least within the deadlines mandated by statute or regulation—would resolve all the class members' claims in this case. For the reasons stated above, and contrary to the government's argument, the *TRAC* factors do not play a determinative role in my analysis at this stage. I conclude that plaintiff has made the necessary prerequisite showing here required by Rule 23, and that class certification is appropriate.

---

[2] As I concluded above, this definition does not exclude beneficiaries of Medicare Part C and Part D. To the extent that defendants may challenge the class standing of individual prospective claimants, I will address those challenges if and when they arise.

*Nationwide Class Certification*

Plaintiffs seek to represent a class of similar individuals who reside around the country. In *Califano v. Yamasaki*, 442 U.S. 682 (1979), the Supreme Court certified a nationwide class of social security beneficiaries seeking timely hearings on their claims. The Court noted that district courts should carefully exercise their discretion in such matters and consider whether certification of a nationwide class might "have a detrimental effect by foreclosing adjudication by a number of different courts and judges," by "increasing . . . the pressures on [the] Court's docket," or by "improperly interfere[ing] with the litigation of similar issues in other judicial districts." *Id.* at 702. It is most efficient to resolve this matter in one proceeding, and I see no reason why any other district would be uniquely suited to address claims arising within it, in view that the claims at issue involve a nationwide program like Medicare with centrally administered ALJs. *See Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011) ("Nationwide declaratory and injunctive relief would be proper given the [Social Security Act's] application of a nationwide policy." (citing *Califano*, 442 U.S. 682)). Although the government contends that each ALJ functions independently to manage his or her docket, I see no evidence that policies regarding the timing of adjudications vary by district. *Cf. Phelps v. Harris*, 86 F.R.D. 506, 513 (D. Conn. 1980) (declining to certify nationwide class of Medicare beneficiaries challenging insurance providers' implementation of Part B where no wrongful conduct occurred outside Connecticut, and where other providers were responsible for administering the program in other states). Nor are there any similar claims pending in other courts elsewhere in the United States, and so there is no risk of undue conflict of legal authority. I conclude that certification of a nationwide class is appropriate here.

*Appointment of Class Counsel*

If the Court certifies a class, it "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* 23(g)(1)(A). The Court can also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* 23(g)(1)(B).

Plaintiffs have demonstrated that their attorneys have the requisite experience prosecuting Medicare class actions, have investigated potential claims, and have the resources to commit to representing the class. *See* Doc. #8-1 at 32; *see also id.* at 29 n.5 (listing Medicare cases on which plaintiffs' attorneys have acted as lead or co-counsel). Indeed, the attorneys have behind them the resources of a national public interest organization that specializes in litigating these very issues. Seeing no objection from defendant, the Court therefore finds it appropriate to appoint plaintiffs' counsel as class counsel.

## Conclusion

For these reasons, I find that the named plaintiffs' claims are not moot. They have satisfied the requirements of Fed. R. Civ. P. 23 and certification of a nationwide class is appropriate here. Accordingly, I GRANT plaintiffs' motions for class certification and appointment of class counsel (Docs. #8, #46), and ORDER that a class that includes the following members be certified:

> All Medicare beneficiaries who have pending a timely request, or will have pending a timely request, for an administrative law judge hearing, who are entitled by statute or regulation to a decision from an administrative law judge within a 90-day period beginning on the date the request for hearing was filed,

and for whom an administrative law judge has not rendered, or will not render, a decision on such hearing by the end of that 90-day period.

Plaintiffs' attorneys Alice Bers, Gill Deford, Judith Stein, and Margaret Murphy, shall represent the class.

It is so ordered.

Dated at Bridgeport this 10th day of June 2015.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge